UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TURBINE POWERED TECHNOLOGY, LLC     DOCKET NO.: 17-CV-0801

VERSUS     HONORABLE REBECCA F. DOHERTY

DAVID CROWE, ET AL     MAGISTRATE PATRICK J. HANNA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND

MAY IT PLEASE THE COURT:

Turbine Powered Technology, LLC (TPT) respectfully asks this Court to remand this cause to the 16th Judicial District Court of the State of Louisiana in and for the Parish of St. Mary pursuant to 28 U.S.C. § 1447(c).  Remand is required because defendants George Jackson and Donald Foley are residents of Louisiana; the underlying state court action does not present questions of federal law; not all of the defendants joined in removal; and defendants did not file for removal timely. Defendants cannot carry their burden of proof to establish jurisdiction based on either diversity or federal question jurisdiction. Defendants now seek to re-litigate findings and rulings of the state court, resulting in unnecessary delay and unduly burdensome expense to Plaintiff.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### 1. Original Petition

This action was originally initiated by TPT on November 7, 2016 in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana, Docket No. 130379-F. The named defendants were David Crowe (Crowe), Kenneth Braccio (Braccio), Kent

---

[1] Defendants have not supplied the full State Court record to this Court, thus the necessary pleadings are attached as exhibits.

Ellsworth (Ellsworth), Arizona Turbine Technology, LLC (AZTT, LLC), Arizona Turbine Technology, Inc. (AZTT, Inc.), all residents of the state of Arizona, Advanced Turbine Services, LLC (ATS) and Turbine Integrated Power Systems, LLC (TIPS), residents of the state of Connecticut and Daniel "Danny" Foley (Foley) and George Jackson (Jackson), residents of the state of Louisiana.  (**Exhibit P-1**).  An Application for Temporary Restraining Order and for Preliminary Injunction was filed with the Original Petition on that date.  (**Exhibit P-2**).  The Court executed the Temporary Restraining Order against all of the defendants stating that the Temporary Restraining Order would be in effect until 9:00 a.m. on January 3, 2017 at which time a hearing would be conducted on the Application for Preliminary Injunction.  (**Exhibit P-3**).

Long Arm Service was obtained upon Ellsworth, AZTT, LLC and Braccio on December 13, 2016.  (**Exhibit P-4**). Long Arm Service was obtained on AZTT, Inc., ATS and TIPS on December 29, 2016.  (**Exhibit P-5**).

The Petition sets forth multiple causes of action under Louisiana law including breach of contract, breach of fiduciary duty, tortious interference with a business relationship and violations of the Louisiana Uniform Trade Secrets and Unfair Trade Practices Acts. No claims are alleged under federal statutes or law.

## 2. Preliminary Injunction

A Preliminary Injunction hearing took place in Franklin, Louisiana on January 3, 2017 resulting in the Court finding Long Arm Service was proper and granting the Preliminary Injunction against the Ellsworth, Braccio, AZTT, LLC, AZTT, Inc., ATS, and TIPS. (**Exhibit P-6**). Also at that time a Preliminary Default was entered against those same defendants for not appearing in State Court and a hearing was scheduled to confirm the Default Judgment on March 3, 2017.  (**Exhibit P-7**).  That hearing was

changed to March 6, 2017 at 9:00 a.m. (**Exhibit P-8**).  Long Arm Service was obtained

in the meantime on Crowe on January 13, 2017. (**Exhibit P-9**).

### 3. Exceptions Filed in State Court

Several attempts had been made to serve Mr. Foley but through subterfuge he

avoided service.  Since service had been requested on Mr. Foley, the delays had not yet

run under Louisiana Code of Civil Procedure Art. 1201.  On the other hand, the deadline

for requesting service was approaching with regard to Mr. Jackson and his whereabouts

were not determined; therefore he was dismissed without prejudice. (**Exhibit P-10**).

Defendants David Crowe, Kenneth Braccio, Arizona Turbine Technology, LLC, Arizona

Turbine Technology, Inc., Advanced Turbine Services, LLC and Turbine Integrated

Power Systems, LLC all filed exceptions to the Petition just prior to the scheduled

hearing to confirm the default.  On April 24, 2017, Foley filed Declinatory, Dilatory and

Peremptory Exceptions against plaintiff's Petition even though he claimed he had not

been properly served.

An Amended Petition was filed by TPT on May 23, 2017 to cure an alleged

improper name issue holding up service on Foley. (**Exhibit P-11**). Proper service was

ultimately obtained on Mr. Foley on June 1, 2017. (**Exhibit P-12**) .

The Court will see that defendant George Jackson remains named in the caption

of the Amended Petition. Through a copying error, his name did not appear under

paragraph 2 of that document, nonetheless, the claims against him are discussed in the

body of the pleading and the Prayer at the end of the Amended Petition asks for relief

against him. Mr. Jackson was served with the Original and Amended Petitions on June

11, 2017. (**Exhibit P-13**).

Accordingly all of the defendants were served prior to removal on June 22, 2017.

Only Kent Ellsworth and George Jackson had not yet made a personal appearance prior to removal. A Default Judgment has been obtained against Ellsworth. (**Exhibit P-14**). Mr. Jackson is also now in default.

**4. Hearing on Exceptions and
Motion to Dissolve Preliminary Injunction**

While the case was pending in State Court, defendants David Crowe, Kenneth Braccio, AZTT, LLC, AZTT, Inc. and ATS filed a Declinatory Exception of Lack of Personal Jurisdiction and a Dilatory Exception of Prematurity.  Defendant Donald I. Foley, Jr. had filed Declinatory Exceptions of Insufficiency of Citation and Service of Process, Dilatory Exceptions of Vagueness or Ambiguity, Improper Cumulation of Actions and Improper Joinder of Actions and Peremptory Exception of No Cause of Action.  These exceptions were originally set to be heard on May 11, 2017, but were upset and continued until June 15, 2017.  In the interim, a Motion to Dissolve Preliminary Injunction and for Damages was filed on behalf of David Crowe, Kenneth Braccio, AZTT, Inc., ATS and Foley along with a Motion to Bifurcate and Continue the Hearing on Damages.  Plaintiff TPT had also filed a Rule to Show Cause why defendants should not be held in Contempt and Motion for Inventory of Assets related to alleged violations of the preliminary injunction. (**Exhibit P-15**).

All of the exceptions and motions were briefed prior to the hearing date.  A full day long hearing was held from 9:00 a.m. until after 5:00 p.m. in the 16th JDC before Judge Aucoin with argument allowed on the Exceptions of Lack of Personal Jurisdiction, Prematurity, Insufficiency of Citation and Service, Exception of Ambiguity or Vagueness, Exception of No Cause of Action, Motion to Bifurcate and Motion to Dissolve Preliminary Injunction. Substantial documentary and testimonial evidence

4

were also taken.

Judge Aucoin sustained the Dilatory Exception of Ambiguity or Vagueness and allowed additional time for plaintiff to amend its Petition to cure the ambiguity and state with further specificity its causes of action.  Mr. Foley was not dismissed from the case.  Defendants removed the case from Judge Aucoin's jurisdiction before the deadline for plaintiff to amend, essentially leaving that ruling in limbo.

The Court denied the Exceptions of Lack of Personal Jurisdiction and Prematurity.  The majority of the day was then taken up with defendants' Motion to Dissolve Preliminary Injunction.  At the end of the day, Judge Aucoin took that matter "under advisement" and promised the litigants a ruling within 30 days, or by July 15, 2017.  The only additional information requested by the Court was a short brief from each party as to the adequacy of the security necessary for the preliminary injunction.

Defendants removed this case from the 16th JDC seven days later on June 22, 2017, in order to avoid the State Court's anticipated ruling.

## LAW AND ARGUMENT

It is axiomatic that the federal courts have limited subject matter jurisdiction and cannot entertain cases unless authorized by the Constitution and legislation. _Coury v. Prot,_ 85 F.3d 244, 248 (5th Cir. 1996).  Accordingly, there is a presumption against subject matter jurisdiction. _Id.; See also Town of Lantana v. Hopper_, 102 F.2d 118, (5th Cir. 1939) ("Federal Courts are of limited jurisdiction, fixed by statute, and the presumption is against jurisdiction throughout the case.").

A defendant may remove an action from state to federal court under 28 U.S.C. § 1441(a) only when the federal court has original jurisdiction. _Caterpillar, Inc. v. Williams,_ 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1332, federal district courts have

5

original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000 and the action is between citizens of different states. Congress permitted diversity jurisdiction to prevent local prejudice against out-of-state defendants. *McSparran v. Weist*, 402 F.2d 867, 876 (3d Cir. 1968).

But because in-state defendants need no protection from local bias, Congress prohibited removal—even when diversity jurisdiction otherwise exists—when a defendant is a citizen of the forum state. *See, e.g., Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939-40 (9th Cir. 2006); *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 499 (3d Cir. 1997). Specifically, 28 U.S.C. § 1441(b)(2) provides that removal is improper "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

The forum-defendant rule in § 1441(b) is merely one example indicating that Congress disfavors removal. *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 10, (1951) (noting that an "important [Congressional] purpose [of the 1948 revision of the United State Court concerning removal] was to limit removal from state courts"). Given removal's disfavor, federal removal statutes are strictly construed against the exercise of removal jurisdiction. *Leffall v. Dallas Indep. School Dist.*, 28 F.3d 521, 524 (5th Cir. 1994); *Hood v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013) *citing Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934) ("Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gasu v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303

U.S. 283, 288-90 (1938).  These principles favor remanding this case to state court.

Further, Courts are instructed to examine their jurisdiction "at every stage of the litigation." _Enochs v. Lampasas County_, 641 F.3d 155, 161 (5th Cir. 2011) _quoting Carnegie–Mellon Univ. v. Cohill_, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) and _United Mine Workers v. Gibbs_, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[T]he issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation."). The general rule in the Fifth Circuit is to remand state law claims when the federal claims to which they are pendent are dismissed. _See Enochs,_ 641 F.3d at 161 _citing Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.,_ 554 F.3d 595, 602 (5th Cir. 2009) (noting that "the general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial") and _Beiser v. Weyler_, 284 F.3d 665, 675 (5th Cir. 2002) (noting that where "no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court").

## A. DIVERSITY JURISDICTION DOES NOT EXIST

The presence of the Louisiana resident defendants George Jackson and Donald Foley precludes removal based on diversity jurisdiction. Despite initially avoiding service, Jackson and Foley were eventually served with the Petition for Damages by a Special Process Server appointed by the state court.

The removal statute refers to defendants that are "joined and served." Both have been. This Court should remand this action to state court because Defendants' interpretation of the "joined and served" language contravenes the intent of Congress in passing the removal statute. Under the "forum-defendant rule" in 28 U.S.C. § 1441(b), a case should not be removed if an in-state defendant has been "joined and served" even if

7

complete diversity otherwise exists. As numerous courts have made clear, the purpose of the "and served" language is to prevent a plaintiff from defeating diversity jurisdiction by suing—but not serving—an in-state defendant that the plaintiff does not intend to pursue.

Here, it is undisputed that TPT requested and the Lafayette Parish Sheriff's Office repeatedly attempted to effect service on the Louisiana defendants. Thereafter, the state court appointed a special process server, who then served Donald Foley on June 1, 2017 and George Jackson on June 11, 2017. All evidence shows that TPT fully intends to pursue its claims against all defendants. Accordingly, the Notice of Removal was an unmistakable act of forum manipulation that contravenes the logic and policy underlying the federal removal statutes and the forum-defendant rule.

### 1. Remand is required because George Jackson and Donald Foley are each and independently a "forum defendant."

The Defendants seek to turn the purpose of § 1441(b) on its head by presumably arguing that they are entitled to the gamesmanship that a forum defendant can evade service by ordinary means, as Foley and Jackson did here when the Lafayette Parish Sheriff's Office attempted to effect service upon them, and thus extend the time within which to seek removal.[2] There is no sound justification for permitting the Defendants to evade service just to create diversity jurisdiction. Even so, their attempt ultimately failed.

In this case the non forum defendants did not file for removal until *after* the Louisiana Court appointed a special process server who did then effect service upon Jackson and Foley in Lafayette Parish. There can be no inference that plaintiff was

---

[2] See the initial Returns of No Service by the Lafayette Parish Sheriff's Office filed into the record of the State Court action. (**Exhibit P-16** *in globo*).

8

dilatory or remiss in serving the forum defendants.  The two forum defendants have been "joined and served" as intended by the statute.

Further regarding lack of complete diversity of citizenship, Defendants improperly state that defendant George Jackson was not named in the Amended Petition. Clearly he was. The Court-appointed Special Process Server served Jackson with the Original Petition for Damages and Amended Petition for Damages prior to the date the other Defendants filed the Notice of Removal in the state court. Jackson avoided service of the Original Petition, necessitating Plaintiff to temporarily dismiss him without prejudice as allowed under the Louisiana Rules of Civil Procedure. After appointment of the Special Process Server, however, the Server successfully served both the Original and Amended Petitions on Jackson.

The Amended Petition expressly supplemented the Original Petition. The Amended Petition was therefore ***not*** a substitution document. The Original Petition remains valid and effective as supplemented and amended. Simultaneous service of both Petitions on Jackson made him a proper party defendant to the state court action. He received sufficient notice of the Plaintiff's action and claims made against him. Jackson therefore has an obligation to respond to the Petitions.

The Defendants failure to include or name Jackson in the Removal pleadings is merely a roundabout yet transparent attempt to exclude the second Louisiana resident in order to argue diversity of citizenship. Jackson's status as a Louisiana resident provides an additional basis for lack of diversity, and thus lack of subject matter jurisdiction herein. Further, considering that Jackson did not consent to or join in the removal attempt, this constitutes improper procedure and an additional basis for remand.

## 2. Foley is still a Defendant in State Court

Defendants also seek to manufacture diversity jurisdiction by arguing that defendant Foley was improperly named in the state court suit because he filed an exception of ambiguity which was upheld by Judge Aucoin at the hearing on June 15, 2017 in St. Mary Parish. Defendants misapprehend state procedure.

Judge Aucoin expressly did not dismiss Foley from the suit. Pursuant to L.C.C.P. art. 932 (A) he allowed additional time for Plaintiff to amend its Petition. The case was removed before the time for amending the Petition expired and placed the state court ruling in limbo. Thus to the present time Foley was and still is a forum defendant in this suit.

## 3. No Fraudulent Joinder

The defendants have argued that defendant Foley has been fraudulently joined to this proceeding. This need not be addressed since the existence of Jackson as a forum defendant destroys diversity. Nonetheless, to the extent the court wishes to address the issue, fraudulent joiner does not exist.

 Fraudulent joinder can be established in two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Griggs v. State Farm Lloyds*, 181 *F.3d 694, 698 (5th Cir. 1999)*. The defendants do not dispute that Foley is a Louisiana resident. Accordingly, the court need only focus on the second test.

Fifth Circuit cases have noted the similarity of the test for fraudulent joinder and the test for a *Rule 12(b)(6)* motion alleging failure to state a claim. For instance, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*. states that the *Rule 12(b)(6)* standard is: "The court should not dismiss the claim unless the plaintiff would not be

entitled to relief under *any set of facts or any possible theory* that he could prove consistent with the allegations in the complaint". *313 F.3d 305, 313 (5th Cir. 2002)*(emphasis added; citing *Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999))*. It then states the fraudulent joinder standard as: "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the non-removing party, the court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned." *Id. at 312.* (emphasis added; citing *Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990))*.

Of course, although the fraudulent joinder and *Rule 12(b)(6)* standards appear similar, the scope of the inquiry is different. For *Rule 12(b)(6)* motions, a district court may only consider the allegations in the complaint and any attachments. *E.g., Great Plains Trust, 313 F.3d at 313.* For fraudulent joinder, the district court may "pierce the pleadings" and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Carriere, 893 F.2d at 100*; *Griggs, 181 F.3d at 699-702.* Any contested issues of fact and any ambiguities of state law must be resolved in the Plaintiff's favor. *Griggs, 181 F.3d at 699.* The burden of persuasion on those who claim fraudulent joinder is a "heavy one". *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).

Plaintiff has set out detailed causes of action in its Petition.  TPT has specifically pled that Foley was an employee of Green Field Energy Services, Inc. who worked with plaintiff's trade secrets and proprietary information, and knew of the relationship between Crowe, Braccio, AZTT and ATS which included the development of intellectual property based on TPT's frac technologies. **Exhibit P-1** at paragraph 24.

11

The Petition asserts that Mr. Foley knew that in order to control the engine supplied by ATS, the derivative intellectual property developed by TPT and Green Field based upon TPT's frac technology had to be used. **Id.** at paragraph 36.

It is asserted that neither TPT nor Green Field ever transferred ownership of any technology or intellectual property to Mr. Foley. **Id.** at paragraph 38.

It is asserted that Mr. Foley knew of the agreements in place between GFES, ATS and TPT and that he conspired with defendant Crowe to take the intellectual property, after Mr. Foley lost his job with Green Field, so as to go into competition with TPT. **Id.** at paragraph 59.  By including Mr. Foley's actions into AZTT and Crowe's actions, it is clear that TPT is asserting a claim against Mr. Foley for the misappropriation and/or aiding and abetting Mr. Crowe to misappropriate the information.   This alone is sufficient to state a cause of action against Foley under the Louisiana Unfair Trade Practices and Trade Secrets Acts.

Paragraph 62 states specifically that Foley is one of the persons who "illegally appropriated the intellectual property derived from modifications to engine control software sold by TES and ATS to TPT under the Vendor Agreement for Turbine-Powered Hydraulic Fracturing Equipment."   The Vendor Agreement is attached to Plaintiff's Petition.

Mr. Foley then became an employee of Energy New Technologies International (ENTI).  Plaintiff alleges that he along with the other defendants induced ENTI to cancel a contract with TPT in order to enter into a contract with AZTT and defendants Crowe and Braccio. **Id.** at paragraphs 112-113.

Defendant Foley is also accused of the theft of the intellectual property in paragraph 69.  That has to be read in conjunction with paragraphs 24, 36, 38, 59 and 62

and him being at ENTI (paragraphs 130, 131, 133 and 134) and in position to appropriate the IP of Plaintiff sold under the Vendor Agreement and subject to protection.

Paragraph 110 specifically states that Foley was obligated to keep trade secrets confidential since he was an employee of Green Field based upon a Non-Disclosure Agreement between Green Field and defendant Crowe's former company TES, and also under the Vendor Agreement with ATS and further based upon the Green Field-TPT License Agreement.  That paragraph further states that Mr. Foley was obligated to keep the information confidential as Green Field employees were subject to internal confidentiality agreements and TPT was an affiliate of Green Field and the licensor of its intellectual property to Green Field.  **Id.**

Paragraph 130 of the Petition specifically states that Foley interfered with TPT's business by assisting ENTI to cease doing business with TPT and enter into business with Crowe and AZTT.  Mr. Foley was in particular position to do so as agent for service of process of ENTI.  That contract alone cost TPT $28,000,000.00.

Paragraph 131 alleges that Mr. Foley aided Mr. Crowe's actions in interfering with that contract.  Paragraph 132 again states that Mr. Foley was bound by a Non-Disclosure Agreement between Green Field and TPT and yet helped disclose the intellectual property anyway.

Paragraph 133 asserts that Mr. Foley aided Braccio and ATS in contacting ENTI.

Paragraph 134 states that the interference by Foley cost TPT the ENTI contract.

Paragraph 147 alleges that Foley was a co-conspirator to deprive TPT of its intellectual property.

Similarly, TPT's Application for TRO and Injunctive Relief specifies that Mr.

Foley had access to proprietary information shared between TPT and Green Field in its Paragraph 34.

Stating enough facts to sustain the ultimate burden of proof at this point in the proceeding is not required. Federal Rule of Civil Procedure 8 generally does not require plaintiffs to plead every fact that they must ultimately prove. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (holding that a pleading may give proper "fair notice" even where only the title of the theory is pled). The federal rules have rejected fact pleading in favor of notice pleading, and only require litigants to plead facts sufficient to allow their opponents to prepare a defense. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). The statement must give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). The simplified notice-pleading standard relies on liberal discovery rules and summary-judgment motions to define the disputed facts and issues and dispose of meritless claims. *Id.*

Foley executed binding Confidentiality Agreements as a condition of his employment with Green Field, nonetheless, after Green Field's bankruptcy, Mr. Foley went on to become and employee and registered agent for service of process for ENTI and then collaborated with Mr. Crowe to interfere with that contract with ENTI. On its face, those allegations are enough to state a cause of action. Defendants cannot sustain the "heavy burden" of proving fraudulent joinder.

### B. <u>NO FEDERAL QUESTION JURISDICTION</u>

Given the litigants lack diversity of citizenship, the only other way Defendants may seek federal court subject matter jurisdiction over the already mature state court action is to assert Federal question jurisdiction. The state court Petition for Damages

does not allege any claims which invoke substantial questions of federal law. Defendants seek to manipulate the law governing removal by asserting non-pled claims of federal law artificially imposed on the Plaintiff. This manipulation fails on a number of grounds including the complete absence of any allegation under a federal statute in Plaintiff's Petition, failure to meet the 30 day deadline for removal and there is no federal pre-emption which applies.

The underlying record conclusively proves that Plaintiff did not make any claims which would require or confer jurisdiction based on a federal question. Therefore, this Court should remand this action.

### 1. Well-Pleaded Complaint Rule

Federal question jurisdiction arises when a plaintiffs' petition sets forth allegations "founded on a claim or right arising under the Constitution, treaties or laws of the United States." *See 28 U.S.C. § 1441(b), § 1331*. In general, questions concerning federal question jurisdiction are resolved by application of the "well-pleaded complaint" rule. *Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152-53, 53 L. Ed. 126, 29 S. Ct. 42 (1908)*. The rule provides that the plaintiff's properly pleaded complaint governs the jurisdictional inquiry. If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking. *See Franchise Tax Bd. v. Laborers Vacation Trust, 463 U.S. 1, 10, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)*.

This means that the plaintiff's initial complaint must contain the references to the federal question and the federal issue evoked. The federal question and issue **cannot** arise in an anticipated defense. It must be presented from the initial complaint. Nonetheless, that is precisely what the Defendants are now attempting to do.  This clearly violates the "*Mottley* Rule", and should be disallowed.

15

## 2. Defendants Surreptitious Attempt
## To Plant a Federal Question

Counsel for defendants was the first person the raise the issue of "patents" in the state court suit when he called the President of TPT, Mr. Ted McIntyre, to the witness stand in the state court hearing on defendants' motion to dissolve the preliminary injunction. All the witness did was answer counsel's leading questions. ***Thus the defendants were the ones to first raise any issues regarding patents.*** It is quite the trick to plant an issue of federal law on a witness who is compelled to answer leading questions and then say the witness was the one who asserted it! The Court should recognize and reject the Defendants' transparent attempt to bootstrap non-existent claims of federal questions in order to contrive a federal question and indirectly create a basis for jurisdiction here.

## 3. Grable Does Not Apply

Another test that courts have used on rare occasion to determine federal question jurisdiction is the "Grable Test", as established in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).

In *Grable* the United States Supreme Court formulated the relevant inquiry as follows: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. 308, 314.

Accordingly, the Fifth Circuit has articulated four requirements that must be met when determining whether a federal issue embedded in a state law cause of action will

16

confer federal question jurisdiction. Federal question jurisdiction is appropriate when: (1) resolving the federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008); *Broussard v. LCS Corr. Servs.*, 2010 U.S. Dist. LEXIS 67522, at *5 (W.D. La. July 6, 2010).

In this case the defendants claim that plaintiff is seeking to recover damages for federal patent law violations even though no such claims have been alleged in any pleading. Defendants are not claiming there is any ambiguity in the patent laws at issue or even of patent ownership. They are claiming that plaintiff's use of state law to protect their intellectual property and trade secrets is somehow not appropriate. Once again they are wrong.  The state law claims do not depend on any disputed federal issue.  They stand alone.

It is also important that, in *Grable*, there was a dispute as to the meaning of a federal statute. The court said: "The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." Courts have therefore been reluctant to find federal-question jurisdiction when it is alleged that a federal statute was violated but there is no dispute as to the meaning of the statute itself. In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, for example, the Supreme Court declined to find federal-question jurisdiction in a "state tort claim resting in part on the allegation that the defendant drug company had violated a federal misbranding prohibition and was presumptively negligent under Ohio law." 545 U.S. at 316.

Just a year after *Grable* was decided, the Supreme Court distinguished *Grable* in

17

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006). In that case, the health insurer for federal employees sued to recover health insurance benefits it had paid to a federal employee because the employee had recovered damages for his injuries in a state court tort action. The insurer's claim arose under state contract law, but the insurer noted that the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits, and FEHBA was a necessary element of the insurer's claim. The court concluded, however, that *Empire* did not resemble *Grable*, finding that it "does not fit within the special and small category" described in *Grable*. The court noted two important distinctions. First, the dispute in *Grable* centered on action by a federal agency and its compatibility with a federal statute, while the dispute in *Empire* centered on action by non-government persons and entities. Second, *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax cases," while *Empire's* reimbursement claim was "fact-bound and situation-specific." The court found that the state court where the tort suit was pending was competent to apply federal law to the extent it was required to resolve the amount of the insurer's reimbursement claim and concluded that the case cannot be squeezed into the slim category *Grable* exemplifies." 547 U.S. at 701.

In the Fifth Circuit, courts have, for example, held that an alleged violation of the federal HIPPA statute does not confer federal-question jurisdiction; that legal malpractice allegedly committed while representing a client in a federal trademark lawsuit and raising issues of federal intellectual property law does not confer federal-question jurisdiction; that there was no federal-question jurisdiction in a case alleging that the defendant's facility violated federal environmental regulations as well as state

18

and local regulations; that there was no federal question jurisdiction in a suit where the plaintiffs' state law claims required the resolution of issues under the Emergency Medical Treatment and Active Labor Act ("EMTALA") and federal Medicare laws, and that there was no federal-question jurisdiction when a suit raised an issue under the federal Telecommunications Act of 1996. In fact, it has been noted that "[c]ourts have uniformly held that a reference to federal environmental statutes, including RCRA, in plaintiffs' negligence claims is insufficient to confer federal question jurisdiction." It has likewise been held that allegations of OSHA and EPA violations do not automatically confer federal question jurisdiction when the action was not brought to enforce those regulations, there was no special need for federal expertise or uniformity in adjudicating the action, and finding federal-court jurisdiction would undermine the division of labor between state and federal courts. *Broussard v. LCS Corr. Servs.*, 2010 U.S. Dist. LEXIS 67522, at *12-13 (W.D. La. July 6, 2010)(collecting cases; citations omitted).

Likewise, in *Hart v. Bayer Corp.*, 199 F. 3d 239 (5th Cir. 2000), the plaintiff had brought state law claims alleging various pesticides manufactured and marketed by corporate defendants.  The defendants removed the case to Federal Court claiming federal question jurisdiction under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) which defendants raised as a defense to plaintiff's claims.  The district court believed it had federal question jurisdiction. The Fifth Circuit reversed.  In reviewing its jurisdiction, the appellate court noted that the plaintiff's Complaint raised no issue of federal law on its face.  199 F. 3d at 244.  Since there was no allegation on the face of plaintiff's Complaint, the defendants relied upon the "complete preemption" exception to the well pleaded-complaint rule in order to establish federal question jurisdiction.  In reviewing the statute, the Court found that Congress did not intend for the FIFRA

19

statute to complete preempt state statutes.  **Id**. at 245.  Accordingly, the district court was overruled and federal question jurisdiction denied.  **Id.** at 246.

The same has been held with regard to United States Patent Laws.  In *Russo v. Ballard Medical Products*, 550 F. 3d 1004 (10th Cir. 2008), the plaintiff was a consultant who developed an improvement on a medical product owned by the defendant.  The parties had signed a Confidentiality Agreement before the plaintiff turned over his materials to the defendant.  While attempting to negotiate license terms, the defendant brazenly applied for patents in its own name that incorporated the plaintiff's essential innovations.  Negotiations failed and the defendant eventually put the innovative product on the market.  Once the plaintiff found out, he filed a unjust enrichment claim under Utah law and for misappropriation of trade secrets.  The jury awarded the plaintiff $20,000,000.00.  The defendant appealed.

On appeal to the Tenth Circuit Court of Appeals, the defendant contended that the trial judge should never have allowed the plaintiff to try his state law claim for misappropriation stating that federal patent law preempted the state law claim.  The court rejected this argument.  550 F. 3d at 1010.  The appellate court (per Judge Gorsuch) noted that the plaintiff had only introduced evidence of patents simply as evidence of the defendant's misappropriation.  By doing so, the plaintiff did not raise any question of patent law.  The court concluded that the plaintiff's trade secret claim did not conflict with and hence was not preempted by federal patent law.  Because the plaintiff claimed a trade secret and did not seek rights associated with ownership of a patent, state law properly governed his claim.  The court held that introducing patents as evidence to support a trade secret claim does not raise any, much less a "substantial" question of federal law.  **Id.** at 1015 (noting a like result in *University of Colorado*

*Found, Inc. v. American Cyanamid,* 342 F. 3d 1298, 1306 (Fed. Cir. 2003).  The court thus found that there was no exclusive jurisdiction under 28 USC § 1338.  **Id.** at 1010.

It should further be noted that plaintiff's theories of liability for each of their causes of action can be resolved without reference to any patents or U.S. Patent Law issues.  Plaintiff's Original and Amending Petitions set out theories of liability and causes of action which do not involve patents.  It is therefore irrelevant that Mr. McIntyre was led into discussing patents while being subjected to examination on the witness stand at the hearing in the 16th JDC on defendants' Motion to Dissolve Preliminary Injunction.  Whether or not Mr. McIntyre believes that there could be a patent violation or whether or not he would ever wish to bring a patent claim, is pure speculation and totally up to Mr. McIntyre.  TPT has not done so in its State Court lawsuit.  As such, all of the claims pertaining to breach of contract, unfair trade practices, trade secrets violations, unjust enrichment and tortious interference with contracts do not support federal subject matter jurisdiction. Thus, if there is a theory of liability for each of the asserted claims for which it is not necessary to resolve an issue of federal patent law, then the District Court lacks jurisdiction under 28 USC § 1338. *Thompson v. Microsoft Corp.,* 471 F. 3d 1288, 1291-92 (Fed. Cir. 2006). *Accord, Mannsfeld v. Evonik Degussa Corp.,* 2011 U.S. Dist. Lexis 1412 (S.D. Ala. 1/5/2011) (plaintiff's state law claims for breach of contract and misappropriation of trade secrets did not invoke U.S. Patent Law).

The U.S. Government has little or no exclusive interest in a state court case asserting violations of state law which contains no claims arising from or relating to federal questions. This case contains none of the considerations in *Grable* and so it does not apply here. This case contains no substantial contested federal issues, nor has

21

Plaintiff pled or alleged any such issues which would affect a national interest in providing a federal forum for claims of theft of trade secrets made exclusively under laws of the State of Louisiana. This action requires no interpretation or application of federal law and therefore does not warrant federal jurisdiction.

### C. DEFENDANTS DID NOT TIMELY REMOVE THIS CASE

The removal is not timely because the special rules regarding patent cases do not apply, the case was not removed within 30 days of notice to the defendants of the claims and not all of the defendants joined in the removal.

### 1. PATENT RULES DO NOT APPLY

As shown in the preceding section, this case does not involve patent law and Plaintiff's claims for unfair trade practices and trade secrets are rightly brought under state law. Accordingly none of the special rules designed for patent cases allow defendants to remove this case.

### 2. 30 DAY DEADLINE VIOLATED

The general requirements for removal are stated in 28 USC § 1446(b) which states:

**(b) Requirements; generally**.

> **(1)** The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> **(2) (A)** When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must  join  in  or consent to the removal of the action.

> **(B)** Each defendant shall have 30 days after receipt by or service on

that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

28 U.S.C. § 1446.

Defendants concede in their Notice of Removal that they did not remove the case pursuant to § 1446(b)(1) or (2) which turn on the deadline when they received Plaintiff's Original Petition. Since they were served at different times the deadline for each one was different, nonetheless the latest defendant to acknowledge receipt of the Petition and claims therein was Danny Foley when he filed various exceptions in the state court on April 24, 2017. Defendants did not remove the case until June 22, 2017, some 58 days later, and clearly outside the deadline.

Instead defendants argue that their counsel's leading questions to Mr. McIntyre regarding patents constitutes a type of "other paper" which somehow allows them to use § 1446 (b)(3) which states:

> **(3)** Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C.S. § 1446.

Defendants claim that they had no idea this case "hinges on federal patent law" until the hearing in the 16th JDC on June 15, 2017.

First of all, besides the fact that *this case does **not** "hinge" on federal patent law*, TPT can find absolutely no authority that states that *verbal responses* to leading questions solicited by defense counsel in a court hearing constitutes an "*other paper*" as required by the statute. Defendants cite no authority that such derived testimony can be an "other paper". The one case they cite for that proposition, that a statement made in

23

oral argument can be an "other paper", *Estate of Davis v. DeKalb County*, *952 F. Supp. 2d 1369 (N.D. Ga. 2013)*, does not actually stand for that proposition.

In that case, the plaintiff filed an amended complaint on November 14, 2011, asserting a claim for "violation of constitutional rights," alleging that, "[u]nder color of office and without reasonable  suspicion and probable cause, the Defendant police officers improperly and unlawfully detained [him]" and "used objectively unreasonable and excessive force against [him]." *Estate of Davis*, *952 F. Supp. 2d at 1371* (first alteration supplied, second alteration in original). It was not until April 22, 2013 that the defendants removed the action to federal court. *Id.* The plaintiff argued that the removal was untimely, because the generalized statement of a claim for "violation of constitutional rights" asserted in his amended complaint had provided the defendants notice that the case was removable. *Id.* The Northern District of Georgia agreed and remanded the action, reasoning that the defendants had failed to seek removal within thirty days of their receipt "of a copy of an amended pleading, motion, order or other paper from which it [might] first be ascertained" that the case had become removable. *Id. at 1373*; *28 U.S.C. § 1446(b)(3)* (alteration supplied). The only thing mentioned in oral argument in state court was by the Plaintiff agreeing with the defendant that he intended to state a § 1983 action in his amended complaint, thus referring back to the actual pleading. There was no new claim or information supplied. Thus there was an actual "other paper", the amended complaint, that the court relied upon.

It is uncontested that a defendant cannot use the "other paper" conversion of the removal time limit by actually creating the "paper" which establishes federal jurisdiction; and that to fall within the "other paper" exception requires a **voluntary** act by the plaintiff. *See Addo v. Globe Life and Accident Ins. Co.*, *230 F.3d 759, 762 (5th*

*Cir. 2000)* (finding that the Plaintiff's post-complaint demand letter was "other paper" giving the defendant notice that the case was removable); *S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996)* (finding that an affidavit by the defendant based on the defendant's subjective knowledge cannot convert a non-removable case into a removable one); *Gaitor v. Peninsular & Occidental S.S. Co., 287 F.2d 252, 254 (5th Cir. 1961)* (finding that "other paper" requires a voluntary act of the plaintiff); *Russell v. Home State County Mut. Ins.Co., 244 F. Supp. 2d 669, 671-72)(E.D. La. 2003)* (finding that an unanswered letter from defense counsel regarding the amount in controversy does not constitute a "voluntary act" for purposes of the other paper exception).

Here there was no "voluntary act" by TPT which allegedly informed the defendants of alleged patent issues. It was defendants' counsel using leading questions to connivingly twist the case into a posture where defendants could attempt to get around the 30 day removal deadline.

Further, it is truly disingenuous for the defendants to argue that they had no notice that Plaintiff's intellectual property was used in patents before the hearing in state court on June 15, 2017.  The defendants filed a notice of collateral proceeding with their Notice of Removal (Rec. Doc. 1). The collateral proceeding noted is CV: 17-0386 filed with this court. (***Exhibit P-17***). Defendants are the plaintiffs in that suit and specifically complain that Mr. McIntyre was contacting clients and putting them on notice of the preliminary injunction issued by the state court regarding TPT's Intellectual Property (IP) and of TPT acquiring 51% of a patent previously filed by David Crowe and others while working for Tucson Embedded Systems, LLC (TES), a contractor of TPT. ***Id.*** The patent at issue in the letters by Mr. McIntyre was specifically identified as US Patent No. 9,429, 078. ***Id.*** Thus defendants have had knowledge all

along that Mr. McIntyre was claiming that TPT's IP was in that patent and that is why in a settlement to litigation in Arizona, TES ceded 51% of that ownership to TPT. Suit CV; 17-0386 was filed on March 13, 2017. Even though their suit cannot be the "other paper" upon which the time for removal begins to run, the cease and desist letters from McIntyre arguably can be and defendants have long missed that deadline.

Finally, the defendants propounded requests for production of documents to TPT in anticipation of the state court hearing. On May 3, 2017 TPT responded to those requests and specifically stated:

**REQUEST FOR DOCUMENTS NO. 1:**

With reference to the allegations contained in paragraphs 2 and 3 of your Rule to Show Cause Why Defendants Should Not Be Held in Contempt & Motion for Inventory of Assets, any and all patents, either domestic or foreign, on an invention obtained by yourself or jointly with others which concerns the intellectual property allegedly misrepresented, stolen and/or infringed.

**RESPONSE TO NO. 1:**

See U.S. Patent 9,429,078 and filed Assignments publicly available at the U.S. Patent & Trademark Office.

***Exhibit P-18*** *in globo*. Once again the defendants had notice that TPT had some of their IP in that patent. The deadline for removal based upon notice of any mention of a patent would have been June 3, 2017 which is 30 days after receipt of the discovery response. Thus defendants missed this deadline as well.

<u>**UNANIMOUS CONSENT NOT OBTAINED**</u>

Defendants admit in their Notice of Removal that not all of the defendants joined in the removal of the case from state court. They argue that those defendants are "nominal". As shown in the section on diversity jurisdiction, George Jackson is a forum

26

defendant who has been served and is a viable defendant in this case. Kent Ellsworth

has been defaulted and a judgment has been obtained against him. He still remains a

defendant in this case as the state court has the sole jurisdiction to enforce its judgment.

Only recently have the appellate delays run on contesting that judgment. It can now be

enforced and Plaintiff has every intention of doing so.

A defaulted party is not a nominal one.  As noted in _GMFS, L.L.C. v. Bounds_, 275

F. Supp. 2d 1350 (S.D. Ala. 2003):

> The defendants note, correctly, that "nominal" defendants need not join in or
> consent to removal. The defendants then argue that Bounds and Stanley are
> "likely to be defaulted" and "will clearly play no role whatever in this lawsuit"
> and so are nominal defendants "in every common sense meaning of the term." ....
> Defendants (if such be Bounds and Stanley) willing to suffer default rather than
> defend themselves may be uninterested in the litigation, but they are hardly
> disinterested. While courts applying the "nominal defendant" exception to the
> rule of unanimity have defined the term in varying ways, none of these
> formulations even colorably describes Bounds and Stanley. The defendants are
> understandably frustrated that Bounds and Stanley are not aggressively
> defending this case, but "an obdurate litigant is not on that account a nominal
> one." _In re Amoco Petroleum Additives Co.,_ 964 F.2d 706, 711 (7th Cir.
> 1992)(describing defendants that refused to respond to a demand for arbitration,
> answer the complaint, or join in removal). In short, Bounds and Stanley are not
> nominal parties to this litigation.

_GMFS, L.L.C. v. Bounds_, 275 F. Supp. 2d 1350, 1353 (S.D. Ala. 2003) (ordering
remand).

Accordingly, since consent to removal was not obtained from Jackson or

Ellsworth, this case must be remanded to state court.

## **CONCLUSION**

There is no complete diversity of citizenship and no substantial question of

application or interpretation of federal law arises from the claims made under Louisiana

law in the state court action. The record of the underlying state court action and all

evidence therein conclusively shows the attempted removal to federal court to be improper. The Defendants cannot show subject matter jurisdiction exists in the Federal Courts, and the action should therefore be remanded to state court without delay as the state court has already heard various motions and is ready to rule on defendants motion to dissolve preliminary injunction.

For these reasons, TPT respectfully requests that the Court grant its motion to remand, remand the case to the 16th Judicial District Court of the State of Louisiana in and for the Parish of St. Mary, and grant Plaintiff attorney fees, court costs and expenses incurred because of this improper removal action.

RESPECTFULLY SUBMITTED:

THE PANAGIOTIS FIRM

*s/DCP*
_____
D.C. PANAGIOTIS (#15032)
1540 W. Pinhook Rd.
Lafayette, LA 70503
Telephone: (337) 264-1516
Fax: (337) 264-1455
**Counsel for Turbine Powered Technology, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2017, a copy of the foregoing was filed electronically with the Clerk of court using the CM/ECF system.

*S/DCP*
_____
D.C. PANAGIOTIS