# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| **Turbine Powered Technology LLC** | **Civil Action No. 6:17-cv-00801** |
| **versus** | **Unassigned District Judge** |
| **Crowe et al** | **Magistrate Judge Whitehurst** |

## REPORT AND RECOMMENDATION

Before the undersigned, by referral from the district judge is Plaintiff, Turbine Powered Technology LLC's ("TPT"), Motion To Remand [Rec. Doc. 18], an Opposition Memorandum filed by Defendants David Crowe ("Crowe"), Kenneth Braccio ("Braccio"), Arizona Turbine Technology, LLC ("AZTT, LLC"), Arizona Turbine Technology, Inc. ("AZTT, Inc."), Advanced Turbine Services, LLC ("ATS"), Turbine Integrated Power Systems, LLC ("TIPS"), and Daniel Foley ("Foley") [Rec. Doc. 45], and a Reply thereto filed by TPT. Based on the foregoing, the undersigned recommends that the motion be granted.

## I. PROCEDURAL BACKGROUND

This action was originally initiated by TPT on November 7, 2016, in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana, Docket No. 130379-F. The Petition set forth multiple causes of action under Louisiana law including breach of contract, breach of fiduciary duty, tortious interference with a business relationship and violations of the Louisiana Uniform Trade Secrets and Unfair Trade Practices Acts. No claims are alleged under federal statutes or law. The

named defendants were Crowe, Braccio, Kent Ellsworth ("Ellsworth"), AZTT, LLC, AZTT, Inc.–all residents of Arizona, ATS and TIPS–residents of Connecticut, and Daniel "Danny" Foley ("Foley") and George Jackson ("Jackson)–residents of Louisiana.

An Application for Temporary Restraining Order ("TRO") and for Preliminary Injunction was filed with the Original Petition on that date. *R. 1-3; 18-4.* The state court executed the TRO against all of the defendants stating that it would be in effect until 9:00 a.m. on January 3, 2017, at which time a hearing would be conducted on the Application for Preliminary Injunction. *R. 1-5; 18-5.* Long Arm Service was obtained upon Braccio, Ellsworth and AZTT, LLC on December 13, 2016. *R. 18-6.* Long Arm Service was obtained on AZTT, Inc., ATS and TIPS on December 29, 2016. *R. 18-7.*

A Preliminary Injunction hearing took place in the State court on January 3, 2017, which resulted in finding Long Arm Service was proper and granting the Preliminary Injunction against Braccio, Ellsworth, AZTT, LLC, AZTT, Inc., ATS, and TIPS. *R. 1-6; 18-8.* Also, at that time a Preliminary Default was entered against those same defendants for not appearing in State court and a hearing was scheduled to confirm the Default Judgment at 9:00 a.m. on March 6, 2017. *R. 18-10.* Long Arm Service was obtained on Crowe on January 13, 2017. *R. 11.*

ATA represents that several attempts were made to serve Foley to no avail. Since service had been requested on Foley, the delays had not yet run under Louisiana

Code of Civil Procedure Art. 1201.  Because, however, the deadline for requesting service on Jackson was approaching and his whereabouts were not determined, he was dismissed without prejudice. *R. 18-12.*  Defendants Crowe, Braccio, AZTT, LLC, AZTT, Inc., ATS  and TIPS all filed exceptions to the Petition just prior to the scheduled hearing to confirm the default.  On April 24, 2017, Foley filed Declinatory, Dilatory and Peremptory Exceptions against plaintiff's Petition even though he claimed he had not been properly served.

TPT filed an Amended Petition on May 23, 2017.[1] At that time, neither defendant Foley nor defendant Jackson had been served. Both Foley and Jackson were named in the caption of the Amended Petition, but only Foley was named in the list of defendants under paragraph 2. The Amended Petition stated specific allegations against both Foley and Jackson in the body of the pleading and the Prayer asked for relief against both defendants. *R. 1-2, pp. 1, 11, 21, 38.*

Proper service of the Amended Petition was ultimately obtained on Foley on June 1, 2017. *R.18-14.* Jackson was served with the Original and Amended Petitions on June 11, 2017. *R. 18-15.* Thus, all of the defendants were served prior to removal on June 22, 2017. Only Ellsworth and Jackson had not yet made a personal appearance prior to removal. A default judgment was obtained against Ellsworth, *R. 18-16*, and Jackson is also now in default.

---

[1]    The Court was unable to locate the Original Verified Petition in the State Court Record and the parties never cited such document.

Defendants filed multiple motions while the case was pending in State court which were to be heard on June 15, 2017: (1) Declinatory Exception of Lack of Personal Jurisdiction and (2) Dilatory Exception of Prematurity filed by Crowe, Braccio, AZTT, LLC, AZTT, Inc. and ATS; (3) Declinatory Exceptions of Insufficiency of Citation and Service of Process, (4) Dilatory Exceptions of Vagueness or Ambiguity, Improper Cumulation of Actions and Improper Joinder of Actions and (5) Peremptory Exception of No Cause of Action all filed by Foley; (6) Motion to Dissolve Preliminary Injunction and for Damages and (7) Motion to Bifurcate and Continue the Hearing on Damages filed on behalf of Crowe, Braccio, AZTT, Inc., ATS and Foley. TPT filed a Rule to Show Cause why defendants should not be held in Contempt and Motion for Inventory of Assets related to alleged violations of the preliminary injunction. *R. 18-17.*

The State court judge held a hearing with oral argument, including documentary and testimonial evidence on the Exceptions of Lack of Personal Jurisdiction, Prematurity, Insufficiency of Citation and Service, Exception of Ambiguity or Vagueness, Exception of No Cause of Action, Motion to Bifurcate and Motion to Dissolve Preliminary Injunction. The State court judge denied the Exceptions of Lack of Personal Jurisdiction and Prematurity and sustained the Dilatory Exception of Vagueness or Ambiguity, but allowed additional time for TPT to amend its Petition to cure the ambiguity and state with further specificity its causes of action.  The judge

took defendants' motion to dissolve the preliminary injunction "under advisement," indicating a ruling would issue within 30 days (July 15, 2017). Foley was not dismissed from the case. Defendants removed this case from the 16th Judicial District Court seven days later on June 22, 2017, before the deadline for plaintiff to amend the petition and before the State court's ruling on the motion to dissolve the preliminary injunction.

## II. CONTENTIONS OF THE PARTIES

Plaintiff TPT contends that this case should be remanded because this Court does not have subject matter jurisdiction as parties are not diverse in citizenship and no questions of federal law pertain to the case. TPT also contends that the Notice of Removal was not timely.

Defendants argue that this case arises under patent law and, therefore, the Court has federal question jurisdiction. Alternatively, they argue that diversity jurisdiction exists. Finally, they argue that the notice of removal was timely filed. The Court will initially address whether or not diversity jurisdiction existed at the time this action was removed, and then address the issue of federal question jurisdiction.

## III. LAW AND ANALYSIS

## A. DIVERSITY JURISDICTION

### 1. Diversity Jurisdiction Standard

Federal district courts are courts of limited jurisdiction, possessing only the

power authorized by the Constitution and by statute. *See, e.g.*, *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Howery v. Allstate Ins., Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  Accordingly, federal courts have subject matter jurisdiction only over civil actions presenting a federal question, 28 U.S.C. § 1331, and those in which the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are citizens of different states, 28 U.S.C. § 1332.  For that reason, a suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal-court jurisdiction establishes otherwise. *Howery* at 916.  Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).  The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand and against federal-court jurisdiction. *Id.* at 366; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  The party invoking subject matter jurisdiction in federal court has the burden of establishing the court's jurisdiction by a preponderance of the evidence. *Howery* at 919.  When an action is removed from State court, as this suit was, the removing party bears the burden of proving that federal jurisdiction exists. *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008).  Accordingly, Defendants, as the removing parties, have the burden of establishing that this Court has jurisdiction over this matter.

### *2. Whether Or Not Diversity Jurisdiction Exists*

Defendants contend that the two non-diverse citizens made parties to the Original Petition, Foley and Jackson, were named to prevent removal. In support of this contention they note that TPT dismissed Jackson (without prejudice) from this action on February 13, 2017, *R. 1-4, pp. 1 & 2,* and that the state court dismissed Foley (without prejudice). Defendants contend that at the time of removal, June 22, 2017, there was complete diversity because Jackson was not renamed in the June 22, 2017 Amended Petition, after he was dismissed without prejudice, and TPT failed to amend its Amended Petition to cure the issues in the exception–leaving Foley dismissed without prejudice.

### a. Jackson and Foley are each a "forum defendant"

TPT asserts that service was made on Foley and Jackson, the forum Defendants, after the non-forum Defendants because Foley evaded service and Jackson could not be located. The record provides that a Louisiana court-appointed special process server did effect service upon Foley and Jackson in Lafayette Parish on June 11, 2017 and June 11, 2017, respectively, and service was filed into the record on June 13, 2017. *R. 18-14; 18-15.* Thus, the two forum defendants were "joined and served" as intended by the statute before the Notice Removal of this action on June 22, 2017.

Defendants further contend that defendant Jackson was not named in the Amended Petition. The Amended Complaint demonstrates that while Jackson was not

named in the list of Defendants, *R. 1-2, ¶ 2, A-I,* he was named with Foley as having "aided and abetted" the other Defendants in the causes of actions alleged. *Id., ¶¶ 59, 110(iii)*, as well as being named in the *Prayer For Relief.* The Amended Petition expressly states that TPT "re-alleges and re-avers all of the allegations of its original Petition." *R. 1-2, ¶¶ 163, 164.* Thus, the Original Petition remains valid and effective, as supplemented and amended, and simultaneous service of both Petitions on Jackson made him a proper party defendant to the state court action. He received sufficient notice of the Plaintiff's action and claims made against him. Yet, the Court notes, Jackson did not consent to or join in the removal attempt.

Defendants also argue that defendant Foley was improperly named in the State court suit because he filed an exception of ambiguity which was upheld by the State court judge at the hearing on June 15, 2017, seven (7) days prior to Removal. As neither party cites the record as to the State court judge's order, there is no evidence that Foley was dismissed from the suit. The parties do not dispute that the judge allowed additional time for Plaintiff to amend its Petition pursuant to L.C.C.P. art. 932 (A). Additionally, there is no dispute that the case was removed before the time the judge allowed for amending the Petition. Thus, Foley was and still is a forum defendant in this suit.

The forum defendant rule, 28 U.S.C. § 1441(b)(2), provides that "where an action is only removable on the basis of diversity jurisdiction, it "may not be removed if any

of the parties in interest properly **joined and served** as defendants is a citizen of the State in which such action is brought." (emphasis added).  As provided in the foregoing, the record provides that the state court appointed a special process server, who then served Foley with the Petition and Amended Petition for Damages on June 1, 2017, and Jackson with the Petition for Damages on June 11, 2017. The presence of the Louisiana resident defendants, Jackson and Foley, precludes removal based on diversity jurisdiction. The removal statute refers to defendants that are "joined and served." Both have been.

### b. TPT has stated a cause of action against Foley

Defendants argue that defendant Foley should be dismissed with prejudice from this action because the State court judge entered an oral ruling granting Defendant's Peremptory Exception of No Cause of Action (and allowed TPT ten days to amend its Petition). Defendants also argue that Foley was improperly joined in this action.

The Fifth Circuit has recognized the similarity of the test for fraudulent joinder and the test for a Rule 12(b)(6) motion alleging failure to state a claim. Under Rule 12(b)(6), "[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint". *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 313 (5th Cir. 2002). The *Great Plains* court recognized that the fraudulent/improper joinder standard is, "After all disputed

questions of fact and all ambiguities in the controlling state law are resolved in favor of the non-removing party, the court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned." *Id*. at 312. (emphasis added) (citing *Carriere v. Sears, Roebuck & Co*., 893 F.2d 98, 100 (5th Cir. 1990)). Thus, the Court will examine whether or not TPT has sufficiently stated a claim against Foley.

In its Petition, TPT alleges that Foley, as an employee of Green Field Energy Services, Inc., worked with plaintiff's trade secrets and proprietary information, and knew of the relationship between Crowe, Braccio, AZTT and ATS which included the development of intellectual property based on TPT's frac technologies. *R. 18-3,* ¶ 24. Specifically, the Petition alleges that Foley knew that, in order to control the engine supplied by ATS, the derivative intellectual property developed by TPT and Green Field based upon TPT's frac technology had to be used. *Id. at* ¶ 36. The Petition further alleges that neither TPT nor Green Field ever transferred ownership of any technology or intellectual property to Mr. Foley. *Id. at* ¶ *38*. Foley knew, however, of the agreements in place between GFES, ATS and TPT and he conspired with defendant Crowe to take the intellectual property in order to go into competition with TPT. *Id. at* ¶ 59. These allegations provide a plausible claim against Foley under the Louisiana Unfair Trade Practices and Trade Secrets Acts.

Count I of the Petition, "Declaratory Relief," alleges that Foley is one of the

persons who "illegally appropriated the intellectual property derived from modifications to engine control software sold by TES and ATS to TPT under the Vendor Agreement for Turbine-Powered Hydraulic Fracturing Equipment." *Id. at ¶ 62, p. 41 (Vendor Agreement).* Ultimately, TPT alleges these Defendants (including Foley) induced ENTI to cancel a contract with TPT in order to enter into a contract with AZTT and defendants Crowe and Braccio. *Id. at ¶¶ 112-113.*

By adopting the allegations of paragraphs 24, 36, 38, 59 and 62 in Count II, "Breach of Contract," TPT also accuses Foley of the theft of the intellectual property in paragraph 69. Under Count VIII, "Louisiana Uniform Trade Secrets Act," paragraph 110 alleges that Foley was obligated to keep trade secrets confidential since he was an employee of Green Field based upon a Non-Disclosure Agreement between Green Field and defendant Crowe's former company TES, and also under the Vendor Agreement with ATS and further based upon the Green Field-TPT License Agreement. *Id. at ¶ 110.* That paragraph further states that Mr. Foley was obligated to keep the information confidential as Green Field employees were subject to internal confidentiality agreements and TPT was an affiliate of Green Field and the licensor of its intellectual property to Green Field. *Id.*

The allegations under Count X, "Tortious Interference With Business Relationships" state: Foley interfered with TPT's business by assisting ENTI to cease doing business with TPT and enter into business with Crowe and AZTT, *Id. at ¶ 130*;

11

Foley aided Crowe's actions in interfering with that contract, *Id. at ¶ 132*; Foley was bound by a Non-Disclosure Agreement between Green Field and TPT and yet helped disclose the intellectual property anyway, *Id. at ¶ 133*; Foley aided Braccio and ATS in contacting ENTI, *Id. at ¶ 134*; Foley's interference cost TPT the ENTI contract, *Id. at ¶ 135*; and Foley was a co-conspirator to deprive TPT of its intellectual property, *Id. at ¶ 136*. TPT's Application for TRO and Injunctive Relief similarly specifies that Foley had access to proprietary information shared between TPT and Green Field.

Based on the foregoing allegations specifically against defendant Foley, the undersigned finds that TPT has stated enough facts to state a cause of action against Foley and he should not be dismissed with prejudice. Similarly, Defendants cannot sustain the "heavy burden" of proving Foley was improperly joined.

## B. FEDERAL QUESTION JURISDICTION

As the undersigned has found that the litigants lack diversity of citizenship, the only other way Defendants may seek federal court subject matter jurisdiction over the already mature state court action is to assert Federal question jurisdiction.

### 1. Well-Pleaded Complaint Rule

Federal courts exercise limited jurisdiction. *Howery*, 43 F.3d at 916. For that reason, a "suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal jurisdiction establishes otherwise." *Id.* In this case, when Defendants removed this action, they invoked federal subject matter jurisdiction on the basis of

the presence of a federal question. As the party invoking federal jurisdiction, the removing defendant, bears the burden of demonstrating the existence of a federal question. In Re: *Hot–Hed, Inc*., 477 F.3d 320, 323 (5th Cir.2007). Removal statutes are to be strictly construed in favor of remand and against removal. Eastus v. Blue Bell Creameries, L.P., 97 F.3d 100,106 (5th Cir.1996). Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Therefore, a defendant may remove a case to federal court based on the presence of a federal question when a plaintiff asserts a claim or right arising under the Constitution or under the treaties or laws of the United States. *Hot–Hed*, 477 F.3d at 323.

Whether a claim arises under federal law so as to confer federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). Under the well-pleaded complaint rule, "there is generally no federal jurisdiction if the plaintiff properly pleads only a state law cause of action." *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir.2002). When a plaintiff's pleadings set forth only state law claims, a federal district court has federal question jurisdiction to entertain the action only if "(1) the state law claims necessarily raise a federal issue or (2) the state law claims are completely preempted by federal law." *Bernhard v.*

*Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir.2008).

The well-pleaded complaint rule makes the plaintiff "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). Therefore, even if federal claims are available, the plaintiff may remain in state court by relying exclusively on state law. *See id.* If, on its face, the plaintiff's state court complaint contains no issue of federal law, there is no federal question jurisdiction. *Aaron v. Nat'l Union Fire Ins. Co.,* 876 F.2d 1157, 1160–61 (5th Cir.1989). A federal claim does not exist simply because facts are available in the complaint to suggest such a claim. *Chavez v. McDonald's Corp.,* 1999 WL 814527, at *2 (N.D.Tex. Oct.8, 1999) (holding that plaintiff had not alleged a federal-law claim even though he referred at one point to exhausting his administrative remedies under federal law, where he otherwise clearly alleged that his claims were based on state statutory or common law). Nor is the existence of a federal defense enough to establish federal question jurisdiction. *Aaron,* 876 F.2d at 1161 ("The fact that a federal defense may be raised to the plaintiff's action will not suffice to create federal question jurisdiction.").

Federal question jurisdiction may exist where "the vindication of [the subject state law cause of action] necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983). It is clear, however, that "the mere presence of a federal issue in a state cause of action

does not automatically confer federal-question jurisdiction" over a case. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1168 (5th Cir.1988); see, also, *MSOF v. Exxon*, 295 F.3d at 491–92 (finding no federal question jurisdiction where "[t]he vindication of ... plaintiffs' rights does not turn on resolution of a federal question."). Furthermore, "the existence of a private cause of action is not a litmus test for the existence of a federal question, as many federal courts had previously held." *Zahora v. Precision Airmotive Corp.*, 2007 WL 765024, 1 (E.D.Pa.2007). Instead, in Grable & Sons Metal Products v. Darue Engineering, the United States Supreme Court formulated the relevant inquiry as follows: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Products v. Darue Engineering, 545 U.S. 308, 314 (2005).

### *2. Grable Requirements*

Defendants argue that the "artful pleading" doctrine applies. Under this principle, which is an "independent corollary" to the well-pleaded complaint rule, a plaintiff is prevented from defeating removal by "artfully avoiding any suggestion of a federal issue." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). The artful pleading doctrine applies: (1) "where state law is subject to complete preemption" or (2) "when Congress has ... expressly provided for the removal of particular actions

asserting state law claims in state court." *Roland v. Green*, 675 F.3d 503, 520 (5th Cir.2012); *see also Bernard* at 551. The Supreme Court has recognized complete preemption in only three areas: The Labor Management Relations Act, ERISA, and the National Bank Act. *Beneficial National Bank v. Anderson*, 123 S.Ct. 2058 (2003); *Evans v. BAC Home Loan* Servicing*, LP*, 2016 WL 8189266, at *2 (W.D.La., 2016). Thus, the state law claims in this case must necessarily "raise a federal issue" for federal question jurisdiction to exist.

Pursuant to *Grable*, the Fifth Circuit has articulated four requirements that must be met when determining whether a federal issue embedded in a state law cause of action will confer federal question jurisdiction. Federal question jurisdiction is appropriate when: (1) resolving the federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

In *Grable*, there was a dispute as to the meaning of a federal statute. The court stated, "The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.*, 545 U.S. at 315.  One year after deciding *Grable*, the Supreme Court distinguished *Grable* in *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006). In *Empire*, the health insurer for federal employees sued to recover health insurance benefits it had paid to a federal employee

because the employee had recovered damages for his injuries in a state court tort action. The insurer's claim arose under state contract law, but the insurer noted that the Federal Employees Health Benefits Act ("FEHBA") vested federal district courts with original jurisdiction to hear suits challenging the denial of benefits, and FEHBA was a necessary element of the insurer's claim. The court concluded, however, that *Empire* did not resemble *Grable*, finding that it "does not fit within the special and small category" described in *Grable*. *Id.* at 699. The Court noted two important distinctions. First, the dispute in *Grable* centered on action by a federal agency and its compatibility with a federal statute, while the dispute in *Empire* centered on action by non-government persons and entities. *Id.* At 700. Second, *Grable* "presented a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous tax cases," while *Empire's* reimbursement claim was a "fact-bound and situation-specific."  The Court found that the state court where the tort suit was pending was competent to apply federal law to the extent it was required to resolve the amount of the insurer's reimbursement claim and concluded that the case cannot be squeezed into the slim category *Grable* exemplifies." *Id*. at 701.

Following the Supreme Court's rulings in *Grable* and *Empire*, "[i]n the Fifth Circuit, courts have, for example, held that an alleged violation of the federal HIPPA statute does not confer federal-question jurisdiction; *Graves v. Health Express, Inc.,* 2009 WL 2835778 (W.D.La.2009); that legal malpractice allegedly committed while

representing a client in a federal trademark lawsuit and raising issues of federal intellectual property law does not confer federal-question jurisdiction, *Singh Duane Morris*, 538 F.3d at 340; that there was no federal-question jurisdiction in a case alleging that the defendant's facility violated federal environmental regulations as well as state and local regulations, *MSOD Corp*., 295 F.3d at 490; that there was no federal question jurisdiction in a suit where the plaintiffs' state law claims required the resolution of issues under the Emergency Medical Treatment and Active Labor Act ("EMTALA") and federal Medicare laws, *Williams v. EDCare Management, Inc.,* 2008 WL 4755744 (E.D.Tex.2008), and that there was no federal-question jurisdiction when a suit raised an issue under the federal Telecommunications Act of 1996. *Budget Prepay, Inc. v. AT & T Corp.,* 605 F.3d 273 (5th Cir.2010). In fact, it has been noted that '[c]ourts have uniformly held that a reference to federal environmental statutes, including RCRA, in plaintiffs' negligence claims is insufficient to confer federal question jurisdiction.' *Giles v. Chicago Drum, Inc.,* 631 F.Supp.2d 981, 983 (N.D.Ill.2009) (holding that allegations of RCRA violations were an insufficient basis for federal question jurisdiction), citing *Mulcahey v. Columbia Organic Chemicals Co.,* 29 F.3d 148 (4th Cir.1994); *Polcha v. AT & T Nassau Metals Corp.,* 837 F.Supp. 94 (M .D.Pa.1993) (remanding state law negligence claim to state court, noting that RCRA creates no private cause of action for damages). It has likewise been held that allegations of OSHA and EPA violations do not automatically confer federal question

jurisdiction when the action was not brought to enforce those regulations, there was no special need for federal expertise or uniformity in adjudicating the action, and finding federal-court jurisdiction would undermine the division of labor between state and federal courts. *Glanton's v. Harrah's Entertraiment, Inc.*, 297 Fed. App'x 685, 687 (9th Cir.2008)." *Broussard v. LCS Corr. Servs.*, 2010 WL 2710642, at *3-4 (W.D. La. July 6, 2010) (collecting cases).

Here, TPT has stated only state law causes of action of breach of contract, breach of fiduciary duty, tortious interference with a business relationship and violations of the Louisiana Uniform Trade Secrets and Unfair Trade Practices Acts. TPT has alleged no claims under federal statutes or law. Defendants argue that TPT is seeking to recover damages for federal patent law violations even though no such claims have been alleged in any pleading. Defendants do not contend there is any ambiguity in the patent laws at issue or even of patent ownership. Rather, Defendants contend that TPT's use of state law to protect its intellectual property and trade secrets is not appropriate–that TPT's state law claims depend on a disputed federal patent issue. The relevant question therefore centers on whether patent law is a necessary element of TPT's well-pleaded state law claims.

In support of their position, Defendants cite the transcript of a June 15, 2017 hearing on Defendants' Motion to Dissolve Preliminary Injunction in State court in which Ted McIntyre, the principal owner of TPT, was questioned. They contend that

McIntyre made "statements clearly indicating that the engine control technologies at the center of his claims involve patents." *R. 45, p. 11.*[2] Review of the transcript provides, when asked whether he had asserted a patent claim against Defendants, McIntyre responded he had not, he was "asserting that [Defendants] stole the IP [Intellectual Property]." When questioned as to the identity of the intellectual property that Defendants allegedly misappropriated if it was not a patent, McIntyre responded, "controlling the turbine engine for hydraulic fracturing power generation… It's all the embedded technology in the software. The source code and the hardware designed, that we paid for, that we own that is used for hydraulic fracturing using turbine engines." *R. 41-3, pp. 190-192, 201.*

In *Christianson v. Colt Industries Operating Corp.*, the Supreme Court held that jurisdiction under section 1338(a) extends "only to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded complaints." 486 U.S. 800, 808–09, (1988). TPT's theories of liability for each of their causes of action can be resolved without reference to any patents or U.S. Patent Law issues.  Plaintiff's Petition sets out theories of liability and

---

[2]     Defendants also cite "excerpts" from "multiple statements to third parties" accusing Defendants of using "patented controls for turbines in oilfield applications" being "in direct violation of said patent" and "infringing on the '078 patent." *R. 45, p. 10.* Such excerpts are unsupported hearsay and will not be considered.

causes of action which do not involve patents. "A case does not arise under the patent laws merely because questions of patent law may arise in the course of interpreting a contract." *Boggild v. Kenner Products, Div. of CPG Products Corp.*, 853 F.2d 465, 468 (6th Cir. 1988). *Accord, Mannsfeld v. Evonik Degussa Corp.*, 2011 WL 53098, at *4-7 (S.D.Ala., 2011) (plaintiff's state law breach of contract claims seeking a declaration of inventorship did not invoke U.S. Patent Law). It is therefore irrelevant that McIntyre was led into discussing patents during examination on the witness stand at the hearing in the State court. Whether or not McIntyre believes that there could be a patent violation or whether or not he would ever wish to bring a patent claim, is merely speculation and totally up to McIntyre. Here, TPT has not done so in its state court lawsuit.

Based on the Court's review of the pleadings in this case as well as McIntyre's testimony, the Court concludes that TPT's state law claims do not support federal subject matter jurisdiction. If there is a theory of liability for each of the asserted claims for which it is not necessary to resolve an issue of federal patent law, then the Court lacks jurisdiction under 28 USC § 1338. *Thompson v. Microsoft Corp.,* 471 F. 3d 1288, 1291-92 (Fed. Cir. 2006).

### C. OTHER ISSUES

As the undersigned has determined that Diversity Jurisdiction did not exist in this case at the time it was removed and that Defendants' cannot establish jurisdiction

21

under federal question, the Court need not address the timeliness of the removal.

TPT also seeks all costs and expenses related to the motion to remand, including attorney's fees. While TPT made no motion for this relief nor provided any argument of such, the Court will consider whether attorney's fees and costs may be warranted. Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). There is no "automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). In applying section 1447(c), the Court must consider "whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id*. at 293. Bad faith is not "a prerequisite to awarding attorney fees and costs." *Id*. at 292. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court must decide "whether the defendant had objectively reasonable grounds to believe the removal was legally proper" at the time of removal, "irrespective of the fact that it might ultimately be determined that removal was improper." *Valdes*, 199 F.3d at 293. In light of the complexity of the issues raised by Defendants, the Court finds that it was objectively reasonable for Defendant to believe that removal was proper. Thus,

the Court determines that an award of fees and costs is not appropriate in this case.

### IV. CONCLUSION

As there is no complete diversity of citizenship and no substantial question of application or interpretation of federal law arises from TPT's claims made under Louisiana law in the state court action, the undersigned recommends that the Court grant Plaintiff, Turbine Powered Technology LLC's, Motion To Remand [Rec. Doc. 18] and remand this case to the Sixteenth Judicial District Court, Parish of St. Mary, Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*,

79 F.3d 1415 (5th  Cir.1996).

**THUS DONE AND SIGNED** this 14th day of February, 2018.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE